UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

ALLSTATE INSURANCE COMPANY, an      :
Illinois corporation, as successor
in interest to Northbrook Excess    :
& Surplus Insurance Company,
formerly known as Northbrook        :
Insurance Company, pursuant to
merger effective January 1, 1985,   :      01 Civ. 10715 (HBP)

              Plaintiff,            :      OPINION
                                           AND ORDER
      -against-                     :

AMERICAN HOME PRODUCTS              :
CORPORATION, a Delaware
corporation,                        :

              Defendant.            :

-----------------------------------X

          PITMAN, United States Magistrate Judge:

I.   Introduction

          Plaintiff Allstate Insurance Company ("Allstate")

moves, pursuant to Local Civil Rule 6.3 as well as Fed.R.Civ.P.

52(b) and 59(e), for reconsideration of certain portions of my

Opinion and Order dated March 31, 2009 ("March 2009 Order")

(Docket Item 46).  For the reasons set forth below, Allstate's

motion is denied in all respects.

II.  Facts

A.  Insurance Policies In Issue

This action arises out of a dispute between Allstate and defendant American Home Products Corporation, now known as Wyeth ("Wyeth"), concerning the scope of the first-layer excess products liability insurance that Allstate's predecessor provided to Wyeth pursuant to two written insurance policies (the "1980 Policy" and the "1981 Policy"; collectively, the "Excess Poli-cies") (Stipulation as to Certain Policies, dated Mar. 5, 2004 ("Stip."), annexed in turn as Exhibit ("Ex.") 6 to the Declara-tion of Christopher J. Bannon, Esq., in Support of Plaintiff's Motion for Summary Judgment, dated Mar. 5, 2004 ("Bannon Decl.")).  The Excess Policies provided that Allstate would insure Wyeth against liability to third parties by increasing the insurance limits of underlying insurance policies to stated amounts (Northbrook Excess and Surplus Insurance Company, Excess Liability Coverage Policy Number 63-006-825, countersigned June 24, 1980 (the "1980 Policy") at NB 00000114, Excess Liability Coverage Policy Number 63-008-121, countersigned July 13, 1981 (the "1981 Policy"), at WYETH 000753, annexed as Exs. A & B, respectively, to Stip. annexed as Ex. 6 to Bannon Decl.).

2

Endorsement 4 to the Excess Policies listed the relevant underlying insurance policies as well as the limits of those policies as follows:

SCHEDULE OF UNDERLYING POLICIES

Carrier, Policy # & Period
. . . .
2) Self Insured Retention except for the 1st $6,000,000 CSL Foreign which is insured with AFIA . . . .

3) A.F.I.A.
   #TBA . . . .

Type of Policy
. . . .
[2)] Products and Completed Operations Liability $5,000,000 aggregate (worldwide) including . . . .

[3)] Comprehensive General Liability (Foreign) . . . .

Applicable Limits
. . . .
[2)] Combined Single Limit For Bodily Injury and Property Damage Combined $5,000,000 each occurrence (where applicable)

[3)] Combined Single Limit for Bodily Injury and Property Damage Combined $1,000,000 each occurrence $1,000,000 aggregate (where applicable)

(1980 Policy at NB 0000122-23, 1981 Policy at WYETH 000758, annexed as Exs. A & B, respectively, to Stip. annexed as Ex. 6 to Bannon Decl.).  The Excess Policies increased the limits listed in the "Applicable Limits" column of Endorsement 4 to greater stated amounts (1980 Policy at NB 0000114, 1981 Policy at WYETH 000753, annexed as Exs. A & B, respectively, to Stip. annexed as Ex. 6 to Bannon Decl.).

3

B.   Procedural History

Allstate commenced this action against Wyeth on October 22, 2001, in New York State Supreme Court, seeking a declaratory judgment that it was not obligated, under the Excess Policies, to reimburse Wyeth for its expenses in defending certain products liability lawsuits in foreign jurisdictions (the "Ativan Law-suits") (Complaint for Declaratory Judgment ("Compl."), annexed as Ex. E to Declaration of Stephen G. Foresta, Esq., dated Mar. 5, 2004 ("Foresta Decl."), 1, 7-8).   In its complaint, Allstate alleged, with respect to "products liability claims attributable to the effective period[s] of the [Excess Policies], [that] the Underlying Policy listed . . . for the [Excess Policies] was a worldwide self-insured retention[1] ("SIR") maintained by [Wyeth]" (Compl., annexed as Ex. E to Foresta Decl., ¶¶ 10, 18), and that $5,000,000 was the sum "required to be exhausted prior to the attachment of the first-layer excess coverage of which the [Excess Policies] formed a part" (Compl., annexed as Ex. E to Foresta Decl., ¶¶ 11, 18).   Although Allstate admitted in its complaint that the $5,000,000 SIR was exhausted for each of the policy years (Compl., annexed as Ex. E to Foresta Decl., ¶¶ 13,

---

[1]Where the holder of an excess insurance policy does not purchase underlying primary insurance, the dollar amount of a loss that is retained by the policyholder and not covered by the excess insurance is referred to as a "self-insured retention."   2 Barry R. Ostrager & Thomas R. Newman, Handbook on Insurance Coverage Disputes § 13.13 at 1088 (14th ed. 2008).

4

21), it nevertheless claimed that it was not liable to Wyeth because the Excess Policies only provided coverage for settlements or judgments against Wyeth, not defense expenses (Compl., annexed as Ex. E to Foresta Decl., ¶¶ 12-15, 21-22, 32).  On November 27, 2001, Wyeth answered Allstate's complaint and sought a declaratory judgment that Allstate was obligated under the Excess Policies to reimburse Wyeth for defense expenses associated with the Ativan Lawsuits (Answer, dated Nov. 27, 2001, annexed as Ex. F to Foresta Decl., 7-8).

Wyeth removed the action to this Court and, on December 5, 2003, the Honorable Deborah A. Batts, United States District Judge, endorsed an agreement between the parties tolling their respective claims for reimbursement and damages until a "final and non-appealable order" [sic] was entered with respect to the Allstate's request for declaratory judgment (Tolling Agreement, Docket Item 18).  Specifically, Wyeth agreed to toll its claim for "a declaration that it [wa]s entitled to reimbursement, under the [Excess] Policies, for defense costs and expenses incurred in connection with any product liability claims, including but not limited to Ativan Claims," but did not "waive its right to assert any other defenses or objections to Allstate's claim for declaratory relief in the Present Declaratory Action" and did not "waive any counterclaims . . . or any other rights except as provided herein" (Tolling Agreement, Docket Item 18, at 2-3, 5).  The

Tolling Agreement defined the "Present Declaratory Action" as Allstate's "seeking a judicial declaration that it ha[d] no obligation under [the Excess Policies] to pay Wyeth's claim for reimbursement of defense costs and expenses incurred by Wyeth in connection with underlying product liability claims against Wyeth by persons who allegedly sustained injury as a result of their use of Ativan" (Tolling Agreement, Docket Item 18, at 1).[2]   The

---

[2]The Tolling Agreement provided in pertinent part:

> WHEREAS, Allstate is seeking a judicial declaration that it has no obligation under [the Excess Policies] to pay Wyeth's claim for reimbursement of defense costs and expenses incurred by Wyeth in connection with underlying product liability claims against Wyeth by persons who allegedly sustained injury as a result of their use of Ativan . . . (. . . the "Present Declaratory Action"); and

> \*       \*       \*

> WHEREAS, Wyeth wishes to preserve the right to bring claims for:  (1) a declaration that it is entitled to reimbursement, under the Northbrook Policies, for defense costs and expenses incurred in connection with any product liability claims, including but not limited to Ativan Claims; and (2) an award of money damages for [such claims] (collectively, "Wyeth's Preserved Claims"); and

> WHEREAS, Allstate wishes to preserve its right to bring additional claims for reimbursement of amounts previously paid by Allstate to Wyeth for defense costs and expenses incurred by Wyeth in connection with underlying product liability claims other than Ativan claims . . . ;

> NOW THEREFORE, . . . Allstate and Wyeth agree . . . as follows:

(continued...)

parties completed discovery and, on January 14, 2004, Judge Batts permitted the parties to file motions for summary judgment (Order, Docket Item 20).  Both parties subsequently consented to my exercising plenary jurisdiction in the case pursuant to 28 U.S.C. § 636(c).

On March 5, 2004, Allstate moved for summary judgment on the issue of whether the Excess Policies obligated Allstate "to pay [Wyeth] for defense expenses that it had incurred in . . . defense of third-party product liability claims . . . arising out of benzodiazepine drugs" (Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment, dated Mar. 5, 2004 ("Pl.'s Br."), 1-2).  Wyeth cross-moved for summary judgment on the same issue; it sought a declaratory judgment that Allstate

---

[2](...continued)
> 1.  Wyeth agrees to refrain, until the Present Declaratory Action is resolved by entry of a final and non-appealable order, from asserting any of Wyeth's Preserved Claims in any legal . . . proceeding. . . .
>
> 5.  Allstate agrees that, in defense of any of Wyeths's Unpreserved Claims, it will not plead the statute of limitations, or the doctrine of laches or any other legal or equitable theory arising out of the passage of time from the Effective Date to the end of the Tolling Period. . . .
>
> 10.  By this Agreement, Wyeth does not waive its right to assert any other defenses or objections to Allstate's claim for declaratory relief in the Present Declaratory Action and does not waive any counterclaims, cross-claims, third party claims, or any other rights except as provided herein.

(Tolling Agreement, Docket Item 18, at 1-5).

was obligated to reimburse it for such expenses (Memorandum of Law in Support of Defendant's Motion for Summary Judgment, dated Mar. 5, 2004 ("Def.'s Br."), 16).  Wyeth stated at the outset of the "Argument" section of its brief in support of its motion for summary judgment:

> There are no genuine issues of material fact to prevent this Court from granting summary judgment to Wyeth on the question of whether Wyeth is entitled to coverage under the [Excess] Policies for fees and expenses incurred in defending Ativan claims brought against the company in the United Kingdom. . . . Because there is no language in the [Excess] Policies expressly excluding the obligation to pay defense costs, Allstate is obligated to pay those costs as a matter of law.

(Def.'s Br. 16).  In its opposition, Allstate acknowledged that Wyeth was cross-moving on the issue of Allstate's obligation to pay defense expenses in connection with the Ativan Lawsuits, but it opposed Wyeth's motion on the grounds that the language of the Excess Policies did not support Wyeth's conclusion:  "Because the [Excess] Policies do not contain any terms requiring reimbursement of defense expenses, [Wyeth] cannot meet its burden of establishing coverage for Ativan Defense Expenses.  Accordingly, [Wyeth]'s motion for summary judgment should be denied" (Plaintiff's Responsive Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, dated Apr. 23, 2004 ("Pl.'s Opp."), 14).[3]  Neither party discussed the existence or significance of

---

[3]In the alternative, Wyeth argued that, even if the Excess Policies were ambiguous, extrinsic evidence indicated that
(continued...)

8

the AFIA policy referenced in Item 3 of Endorsement 4 of the Excess Policies or the phrase, "except for the 1st $6,000,000 CSL Foreign which is insured with AFIA," which appears in Item 2 of Endorsement 4.

On February 25, 2009, after the parties had fully briefed their cross-motions for summary judgment, I wrote to counsel in order to inform them that "I ha[d] been working on the motions for summary judgment . . . and [was] fairly close to issuing a decision," but that "two questions . . . ha[d] arisen which, I believe[d], need[ed] to be further addressed by counsel" at oral argument (Letter from the Court to Counsel for Allstate and Wyeth, dated Feb. 25, 2009 ("February 2009 Letter"), at 1). One of the questions that I asked counsel to address concerned the specific point at which Allstate's liability under the Excess Policies attached:

> If the [Excess] [P]olicies and the SIR . . . require[] that defense costs be paid in addition to the policy limits, at what point does []Allstate's liability for defense costs attach?  In other words, what is the [underlying] policy's limit with respect to defense costs; what level of defense costs did Wyeth have to incur to reach the excess coverage?

(February 2009 Letter at 1).

---

³(...continued)
Allstate was required to reimburse Wyeth's defense costs. Allstate again opposed Wyeth's argument on its merits:  "Here, the extrinsic evidence in no way establishes that the [Excess] Policies include an obligation for reimbursement of Ativan Defense Expenses, and summary judgment in [Wyeth]'s favor is therefore unwarranted" (Pl.'s Opp. 16).

Counsel responded to this question at oral argument on March 2, 2009. Wyeth's counsel argued that Allstate's liability for defense costs attached after Wyeth had paid five million dollars in settlements or judgments (Transcript of Telephonic Proceedings Before the Court, dated Mar. 2, 2009 ("Tr."), at 3-4). Allstate's counsel responded that Allstate's liability for payment of any of Wyeth's defense costs covered by the Excess Policies did not attach until after Wyeth had exhausted both the self-insured retention and the six-million-dollar insurance policy with AFIA mentioned in item number 2 of Endorsement 4 to the Excess Policies:

> [Counsel for Allstate]: Maybe it's also important to look at the actual language of the [Excess Policies] that discusses the underlying coverage which is Endorsement 4 of the [Excess Policies]. . . .
>
> It shows [i]tem number 2 for the self-insured retention, of course the 5 million that we've been discussing. It also shows, there's an indication there, ["]except for the first six million foreign, which is insured with [AFIA],["] you know. So, really, I think it's [Allstate's] position that, you know, outside of the whole framework of how the SIR is exhausted, that whatever is underlying its policy has to be properly exhausted. . . .
>
> The Court: Say that again please. I'm not sure I understood you.
>
> [Counsel for Allstate]: To the extent that there is other coverage underlying the [Excess Policies], which is indicated in that Endorsement number 4, specifically the foreign policy with [AFIA], that would also have to be exhausted prior to any attachment of the [Excess Policies].

*    *    *

> [Counsel for Allstate]: Simply, with respect to, you
> know, your question number 1 and the attachment of the
> [Excess Policies], I don't want to suggest that attach-
> ment is limited to exhaustion of the SIR.  Attachment
> occurs when there's been proper exhaustion of all
> underlying, and I'll leave it at that.

(Tr. at 11-12, 30-31).  Neither party's counsel mentioned the

AFIA Policy in Item 3 of Endorsement 4 of the Excess Policies.

In addition, neither party's counsel mentioned the Tolling

Agreement or suggested that the parties had not intended to put

the issue of when Allstate's liability attached before the Court.

In my March 2009 Order, I granted Wyeth's motion for

summary judgment in part.  I determined that Allstate had a duty

under the Excess Policies to reimburse Wyeth for Wyeth's defense

expenses under certain conditions, but concluded that factual

issues existed as to whether those conditions had been met.

Allstate Ins. Co. v. Am. Home Prods. Corp., 01 Civ. 10715 (HBP),

2009 WL 890078 at *9-*10 (S.D.N.Y. Mar. 31, 2009).  In addition,

I determined that Allstate's duty to reimburse Wyeth's expenses

attached after Wyeth had paid five million dollars in judgments

or settlements of products liability lawsuits covered by the

Excess Policies.  Allstate Ins. Co. v. Am. Home Prods. Corp.,

supra, 2009 WL 890078 at *9-*10.  I further determined that

Allstate had waived its argument that its liability did not

attach until after Wyeth had exhausted both its self-insured

retention and an additional six-million-dollar underlying policy

11

specified in Item 2 of Endorsement 4 of the Excess Policies
because it had not raised that issue prior to oral argument.
<u>Allstate Ins. Co. v. Am. Home Prods. Corp.</u>, <u>supra</u>, 2009 WL 890078
at *2 n.4, *9 n.11.

On April 13, 2009, Allstate moved for reconsideration
of the portions of my March 2009 Order that determined that its
duty to reimburse certain of Wyeth's expenses attached after
Wyeth had paid five million dollars in judgments or settlements
and that Allstate had waived its counter-argument that an addi-
tional underlying policy had to be exhausted before Allstate's
liability attached (Plaintiff's Memorandum of Law in Support of
Its Motion for Reconsideration, dated Apr. 13, 2009 ("Pl.'s
Recon. Br.")).  Wyeth submitted its opposition to Allstate's
motion on April 30, 2009 (Defendant's Memorandum of Law in
Opposition to Plaintiff's Motion for Reconsideration, dated Apr.
30, 2009 ("Def.'s Recon. Opp.")), and Allstate submitted its
reply on May 14, 2009 (Plaintiff's Reply Memorandum of Law in
Support of Its Motion for Reconsideration, dated May 14, 2009
("Pl.'s Recon. Reply")).

III.  <u>Analysis</u>

A.  <u>Legal Principles</u>

Motions for reconsideration are appropriate only if
"there has been an intervening change of controlling law," "new

12

evidence has become available," or "there is a need to correct a clear error or prevent manifest injustice." Virgin Airways v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992); accord Tatum v. City of New York, 06 Civ. 4290 (BSJ)(GWG), 2009 WL 976840 at *1 (S.D.N.Y. Apr. 9, 2009); In re Refco Capital Mkts., Ltd. Brokerage Customer Sec. Litig., 06 Civ. 643 (GEL), 07 Civ. 8686 (GEL), 07 Civ. 8688 (GEL), 2008 WL 4962985 at *1 (S.D.N.Y. Nov. 20, 2008); U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., 182 F.R.D. 97, 100 (S.D.N.Y. 1998), aff'd, 241 F.3d 135 (2d Cir. 2001).

"Under Local Rule 6.3, a party may not 'advance new facts, issues or arguments not previously presented to the Court.'" EEOC v. Fed. Express Corp., 268 F. Supp.2d 192, 199 (E.D.N.Y. 2003), quoting Morse/Diesel, Inc. v. Fidelity & Deposit Co. of Md., 768 F. Supp. 115, 116 (S.D.N.Y. 1991). The proponent of a motion for reconsideration should not

> treat the court's initial decision as the opening of a
> dialogue in which that party may then use [Local Civil
> Rule 6.3] to advance new facts and theories in response
> to the court's rulings. The purpose of the rule is "to
> ensure the finality of decisions and to prevent the
> practice of a losing party examining a decision and
> then plugging the gaps of a lost motion with additional
> matters."

McMahan & Co. v. Donaldson, Lufkin & Jenrette Sec. Corp., 727 F. Supp. 833, 833 (S.D.N.Y. 1989), citing Lewis v. New York Tel., 83 Civ. 7129 (RWS), 1986 WL 1441 at *1 (S.D.N.Y. Jan. 29, 1986); accord Caribbean Trading & Fid. Corp. v. Nigerian Nat'l Petroleum

13

Corp., 948 F.2d 111, 115 (2d Cir. 1991); see also In re Refco
Capital Mkts., Ltd. Brokerage Customer Sec. Litig., supra, 2008
WL 4962985 at *1 ("A motion for reconsideration is not an oppor-
tunity for a losing party to advance new arguments to supplant
those that failed in the prior briefing of the issue."); In re
Integrated Res. Real Estate Ltd. P'ships Sec. Litig., 850 F.
Supp. 1105, 1151 (S.D.N.Y. 1994), rev'd on other grounds, 967
F.2d 742 (2d Cir. 1992); Woodard v. Hardenfelder, 845 F. Supp.
960, 966 (E.D.N.Y. 1994).

Likewise, a party may not use a motion for reconsidera-
tion "to reargue those issues already considered when [the] party
does not like the way the original motion was resolved." In re
Houbigant, Inc., 914 F. Supp. 997, 1001 (S.D.N.Y. 1996); see also
Mahmud v. Kaufmann, 496 F. Supp.2d 266, 270 (S.D.N.Y. 2007)
("[R]econsideration is . . . narrowly construed and strictly
applied so as to avoid repetitive arguments."), quoting Ursa
Minor Ltd. v. Aon Fin. Prods., Inc., 00 Civ. 2474, 2000 WL
1279783 at *1 (S.D.N.Y. Sept. 8, 2000).

Rather, a party may be entitled to reconsideration or
reargument if it demonstrates that

> the Court has "overlooked controlling decisions or
> factual matters that were put before the Court on the
> underlying motion," Davis v. The Gap, Inc., 186 F.R.D.
> 322, 323 (S.D.N.Y. 1999), and which, had they been
> considered, "might reasonably have altered the result
> before the court." Consol. Gold Fields v. Anglo Am.
> Corp., 713 F. Supp. 1457, 1476 (S.D.N.Y. 1989).

14

Yurman Design Inc. v. Chaindom Enters., Inc., 99 Civ. 9307 (JFK),
2003 WL 2047849 at *1 (S.D.N.Y. Aug. 29, 2003); accord In re
Refco Capital Mkts., Ltd. Brokerage Customer Sec. Litig., supra,
2008 WL 4962985 at *1; Campbell v. Poole, 04-CV-6261 (VEB), 2008
WL 2561998 at *1 (W.D.N.Y. June 26, 2008); Mahmud v. Kaufmann,
supra, 496 F. Supp.2d at 269-70; Minicone v. United States,
5:89-CR-173 (HGM), 2007 WL 2572119 at *1 (N.D.N.Y. Aug. 31,
2007); In re Biovail Corp. Sec. Litig., 247 F.R.D. 71, 71-72
(S.D.N.Y. 2007); Hamad v. Nassau County Med. Ctr., 191 F. Supp.2d
286, 304 (E.D.N.Y. 2000); see also Local Civil Rule 6.3 (notice
of motion for reconsideration or reargument "shall be served with
. . . a memorandum setting forth concisely the matters or con-
trolling decisions which counsel believes the court has over-
looked").

B.   The Parties' Arguments

Allstate asserts three purported bases for reconsidera-
tion.  None are meritorious.

First, Allstate claims that I should reconsider my
decision on the issue of when Allstate's liability attached
because that issue was not properly before me.  According to
Allstate, the point at which its liability attached was one of
"Wyeth's Preserved Claims" and consideration of it should have

15

been deferred pursuant to the Tolling Agreement (Pl.'s Recon. Br. 2-3; Pl.'s Recon. Reply 4-7).

Courts generally do not address facts or issues on a motion for reconsideration that were not previously put before them.  Allstate never argued that Wyeth's cross-motion was inappropriate in light of the Tolling Agreement.  In fact, Allstate never asserted the Tolling Agreement in response to any of Wyeth's arguments in support of its motion for summary judgment.  Moreover, I specifically asked the parties to address the issue of when Allstate's obligation to reimburse Wyeth's defense expenses attached in my February 2009 Letter to the parties: "[A]t what point does []Allstate's liability for defense costs attach?  In other words,  . . . what level of defense costs did Wyeth have to incur to reach the excess coverage?" (February 2009 Letter at 1).  My February 2009 Letter made clear that I viewed the issue as necessary for my resolution of the parties' motions for summary judgment (see February 2009 Letter at 1 ("I have been working on the motions for summary judgment[, and,] . . . [i]n the course of considering the matter, two questions have arisen which, I believe, need to be further addressed by counsel.").  At oral argument, Allstate failed to assert, as it now argues for the first time, that the issue of attachment was preserved for adjudication at some later date under the Tolling Agreement.  Allstate's reliance on the Tolling Agreement is clearly an

16

afterthought that was never timely asserted.  Accordingly, it is not a proper basis for reconsideration.  EEOC v. Fed. Express Corp., supra, 268 F. Supp.2d at 199.

Second, Allstate claims that it was not proper for me to address the issue of attachment in my March 2009 Order because "the motions for summary judgment were limited to the issue of whether the language of certain insurance policies . . . provide[d] coverage for defense expenses" and "neither party moved for a determination regarding exhaustion of underlying insurance and resulting attachment" of the Excess Policies (Pl.'s Recon. Br. 2, 4, 5).  Allstate, however, mischaracterizes the parties' motions.  Wyeth did not simply move for summary judgment as to whether the language of the Excess Policies provided coverage for defense expenses in the abstract.  Wyeth moved for a declaratory judgment that it was "entitled to coverage under the [Excess] Policies for fees and expenses incurred in defending [the] Ativan [Lawsuits]" (Def.'s Br. 16).  Allstate acknowledged the scope of Wyeth's motion on at least two occasions, yet it never objected to Wyeth's motion on the grounds that it violated the Tolling Agreement (Pl.'s Opp. 14, 16).  Because Wyeth moved for judgment on the ultimate issue of Allstate's liability for Wyeth's defense expenses in the Ativan Lawsuits under the Excess Policies, it was necessary to determine whether and when Allstate's liability for such expenses attached.  See Certain Underwriters at Lloyd's v.

17

St. Joe Minerals Corp., 90 F.3d 671, 674-75 (2d Cir. 1996)
(affirming dismissal of insurer's complaint seeking declaration
of no liability; action not ripe because attachment point not
reached).  If there had been a genuine issue of material fact
respecting whether Allstate's obligation had attached, I would
have had to deny Wyeth's motion on that basis.  Thus, the ques-
tion of when Allstate's obligation to reimburse defense expenses
attached was integral to Wyeth's motion for summary judgment.  If
Allstate had believed that the Tolling Agreement was an appropri-
ate response to Wyeth's cross-motion, it was incumbent upon
Allstate to make that known in its opposition or, at the very
least, at oral argument.

          Third, Allstate argues that I should reconsider my
determination that Allstate waived its argument that there was an
additional six-million-dollar insurance policy with AFIA that had
to be exhausted before Allstate's purported liability for defense
expenses under the Excess Policies attached because I "overlooked
the clear terms of the schedule of underlying insurance" concern-
ing that six-million-dollar policy and "ha[d], in effect, elimi-
nated this language from the Policies," which would "prejudice"
Allstate in the future (Pl.'s Recon. Br. 6).  Allstate is incor-
rect that I overlooked the contents of the Excess Policies in
rendering my decision.  Indeed, Allstate appears to be attempting
to reargue the issues that were already considered, even though

18

it has no reasonable basis to expect that my conclusion on those issues would be altered.  In re Houbigant, Inc., supra, 914 F. Supp. at 1001.

Moreover, Allstate's argument does not persuade me that I was incorrect in determining that Allstate waived its argument with respect to the additional six-million-dollar policy. Allstate's complaint in this action alleged that Wyeth had only one "Underlying Policy" applicable to the Ativan Lawsuits:  a five-million-dollar SIR (Compl., annexed as Ex. E to Foresta Decl., ¶¶ 10, 18).  In addition, Allstate's complaint specifically alleged that five million dollars was the sum "required to be exhausted prior to the attachment of the first-layer excess coverage of which the [Excess Policies] formed a part" (Compl., annexed as Ex. E to Foresta Decl., ¶¶ 11, 18).  Thus, Allstate conceded in its complaint that the five-million-dollar SIR was the sole underlying policy applicable to the Ativan Lawsuits, and that its liability under the Excess Policies for covered claims would attach upon exhaustion of that SIR.

"A party's assertion of fact in a pleading is a judicial admission by which it is normally bound throughout the course of the proceeding."  Bellefonte Re Ins. Co. v. Argonaut Ins. Co., 757 F.2d 523, 528 (2d Cir. 1985).  Allstate's belated assertion that exhaustion and attachment are elements of Wyeth's claim for reimbursement (Pl.'s Recon. Br. 1 n.1) has no bearing

19

on the matter.  Allstate waived its arguments concerning those
elements when it admitted in its complaint that the SIR was the
sole underlying policy in issue.  Allstate's argument that the
"clear terms of the schedule of underlying insurance" indicate
that Wyeth had to exhaust another underlying policy in addition
to the SIR does not alter the fact that Wyeth and the Court were
entitled to rely upon Allstate's prior admission to the contrary
when the former prepared its motion for summary judgment and when
I addressed the parties motions.[4]  If Allstate had wished to
amend or retract the judicial admissions in its complaint that
the Excess Policies attached upon exhaustion of the five-million-
dollar SIR, it was incumbent on Allstate to alert Wyeth and the
Court to that fact prior to oral argument on the parties' motions

---

[4]Moreover, Allstate is incorrect that the terms of
Endorsement 4 are "clear."  Endorsement 4 to the Excess Policies
indicated that Wyeth had a SIR with a limit of five million
dollars, "except for the 1st $6,000,000 CSL Foreign which is
insured with AFIA."  The meaning of the reference to the six-
million-dollar policy is ambiguous in light of the five-million
dollar limit listed for Wyeth's SIR.  However, it is not
necessary to resolve this ambiguity because Allstate appears to
have abandoned its argument that the reference to a six-million-
dollar policy in Item 2 of Endorsement 4 describes an additional
policy that had to be exhausted before Allstate's liability
attached.  Instead, Allstate now argues that a one-million-dollar
"Comprehensive General Liability (Foreign)" policy listed in Item
3 of Endorsement 4 had to be exhausted before Allstate's
liability for the Ativan Lawsuits, if any, attached (Pl.'s Recon.
Br. 3).  Allstate relied entirely on Item 2 of Endorsement 4 at
oral argument, and it raises its argument concerning Item 3 for
the first time in its motion for reconsideration.  This new
argument is not cognizable on a motion for reconsideration.

for summary judgment. Allstate failed to do so and, thus, waived its argument, as I stated in the March 2009 Order.

IV.   Conclusion

Accordingly, for all the foregoing reasons, Allstate's motion for reconsideration is denied in its entirety.

Dated:   New York, New York
         September 3, 2009

SO ORDERED

HENRY PITMAN
United States Magistrate Judge

Copies transmitted to:

Christopher J. Bannon, Esq.
Aronberg Goldgehn Davis & Garmisa
Suite 3000
One IBM Plaza
Chicago, Illinois  60611

Stephen G. Foresta, Esq.
Orrick, Herrington & Sutcliffe LLP
666 Fifth Avenue
New York, New York  10103