UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

ALLSTATE INSURANCE COMPANY, an        :
Illinois corporation, as successor
in interest to Northbrook Excess      :
& Surplus Insurance Company,
formerly known as Northbrook          :
Insurance Company, pursuant to
merger effective January 1, 1985,     :    01 Civ. 10715 (HBP)

                    Plaintiff,        :    OPINION
                                           AND ORDER
        -against-                     :

AMERICAN HOME PRODUCTS                :
CORPORATION, a Delaware
corporation,                          :

                    Defendant.        :

----------------------------------X

                PITMAN, United States Magistrate Judge:


I.  Introduction

                This action arises out of a contract dispute between

Allstate Insurance Company ("Allstate") and American Home Prod-

ucts Corporation, now known as Wyeth ("Wyeth").  Both parties

move for summary judgment on the issue of whether Allstate is

obligated under its excess insurance policies to pay the costs of

defending products liability lawsuits brought against Wyeth.

Allstate also moves to strike various documents submitted by

Wyeth in support of its motion for summary judgment.  All parties

have consented to my exercising plenary jurisdiction pursuant to

28 U.S.C. § 636(c).

For the reasons set forth below, Wyeth's motion for summary judgment (Docket Item 57) is granted, and Allstate's cross-motion for summary judgment (Docket Item 62) and motions to strike (Docket Items 75, 77) are denied.

II.  Facts

   A.  The Insurance Policies

      1.  The Excess Policies

From 1980 to 1984, Wyeth purchased 20% of its first layer of excess products liability insurance from Allstate's predecessor in interest, Northbrook Excess and Surplus Insurance Company ("Northbrook") (Local Rule 56.1 Statement by Plaintiff ("Pl's 56.1") ¶¶ 1, 13; Wyeth's Responding Statement to Plaintiff's Rule 56.1 Statement of Uncontested Facts ("Def's Opp. 56.1") ¶¶ 1, 13).[1]  The material terms and conditions of the excess insurance agreements for the periods from 1980 to 1981 and 1981 to 1984 were set forth respectively in two written insurance policies (the "Excess Policies") (Stipulation as to Certain

---

[1]Although Allstate identifies itself as the successor in interest to Northbrook pursuant to a merger agreement that became effective on January 1, 1985, it also identifies itself as Northbrook in its submissions and both sides offer post-January 1, 1985 documents which are addressed to or refer to Northbrook as an existing entity.  Because there is no dispute that Allstate stands in Northbrook's shoes and for sake of simplicity, I shall use the term "Allstate" to refer to both Allstate and Northbrook.

Policies, dated Mar. 5, 2004 ("Stip."), annexed in turn as
Exhibit 1 to the Declaration of Mark S. Goldgehn, in Support of
Plaintiff's Motion for Summary Judgment, dated July 24, 2009
("Goldgehn Decl.")).  The Excess Policies provided that Allstate
would insure Wyeth against liability to third parties by increas-
ing the insurance limit of underlying insurance policies to
stated amounts (Northbrook Excess and Surplus Insurance Company,
Excess Liability Coverage Policy Number 63-006-825, countersigned
June 24, 1980 ("1980 Policy") at NB 00000114, Excess Liability
Coverage Policy Number 63-008-121, countersigned July 13, 1981
("1981 Policy"), at WYETH 000753, annexed as Exs. A & B, respec-
tively, to Stip. annexed as Ex. 1 to Goldgehn Decl.).  Subject to
certain exceptions, the scope of the coverage Allstate provided
to Wyeth was the same as that provided in the underlying policy,
and the increased amount of coverage was available to Wyeth only
after the limits of that underlying policy were exhausted (1980
Policy at NB 00000114, 1981 Policy at WYETH 000753, annexed as
Exs. A & B, respectively, to Stip., annexed in turn as Ex. 1 to
Goldgehn Decl.).

        The Excess Policies stated that they were "subject to
the same warranties, terms and conditions (except as regards the
premium, the obligation to investigate and defend, the amount and
limits of liability and the renewal agreement, if any, and except
as otherwise provided herein) as are contained in or as may be

3

added to the Underlying Policy . . ." (1980 Policy at NB
00000114, 1981 Policy at WYETH 000753, annexed as Exs. A & B,
respectively, to Stip. annexed as Ex. 1 to Goldgehn
Decl.(emphasis added)).  Wyeth's "Underlying Policy" for the
purposes of "Products and Completed Operations Liability" cover-
age, was a self-insured retention[2] of five million dollars (1980
Policy at NB 00000123, 1981 Policy at WYETH 000758, annexed as
Exs. A & B, respectively, to Stip. annexed as Ex. 1 to Goldgehn
Decl.; Pl.'s 56.1 ¶ 4; Def.'s Opp. 56.1 ¶ 4).  The parties both
agree that Wyeth's self-insured retention, in turn, operated or
was "deemed to operate in accordance with the terms and condi-
tions of" a policy issued by the Midland Insurance Company to
Wyeth for primary coverage for the period from November 1, 1976
to November 1, 1977 (the "Midland Policy") (Pl's 56.1 ¶ 5;
Wyeth's Objections and Responses to Plaintiff Northbrook's Second
Set of Interrogatories at ¶ 3, annexed as Ex. 2 to Goldgehn
Decl.; Stip. annexed as Ex. 1 to Goldgehn Decl.).

---

[2]Where the holder of an excess insurance policy does not
purchase underlying primary insurance, "the dollar amount of a
loss that is retained by the policyholder and not covered by
[excess] insurance is referred to as a 'self-insured retention.'"
 2 Barry R. Ostrager & Thomas R. Newman, Handbook on Insurance
Coverage Disputes § 13.13 at 1088 (14th ed. 2008).

2.   <u>The Midland Policy</u>

The Midland Policy expressly required Midland to defend Wyeth against lawsuits seeking damages for bodily injury caused by an "occurrence" (Midland Insurance Company, General Liability-Automobile Policy No. GL 195558, countersigned Feb. 1, 1977, ("Midland Policy"), at NBK 0000374, annexed as Ex. C to Stip., annexed in turn as Ex. 1 to Goldgehn Decl.; Pl.'s 56.1 ¶ 6; Def.'s Opp. 56.1 ¶ 6).

Endorsement 22 to the Midland Policy granted Midland the "right but not the duty" to defend Wyeth against certain foreign lawsuits, and provided that, should Midland elect not to defend Wyeth in such lawsuits, Midland would reimburse Wyeth for the reasonable costs of investigating and defending such suits so long as Midland was given the opportunity to supervise such investigation and defense:

> If claim is made or suit is brought elsewhere than within the United States of America, its territories or possessions, or Canada, the Company shall have the right but not the duty to investigate and settle such claims, and defend such suits.
>
> In any case in which the Company elects not to investigate, settle or defend, the insured[,] under the supervision of the Company, shall make or cause to be made such investigation and defense as are reasonably necessary and subject to prior authorization by the Company, will effect to the extent possible such settlement or settlements as the Company and the Insured deem prudent.  The Company shall reimburse the Insured for reasonable costs of such investigation, settlement or defense.

(Midland Policy at NBK 0000399, annexed as Ex. C to Stip.,
annexed in turn as Ex. 1 to Goldgehn Decl.).

    B.   <u>The Products Liability Lawsuits</u>

       Beginning in 1988, Wyeth's insured subsidiary, John
Wyeth & Brother, Ltd., was named as a defendant in more than
11,000 products liability actions filed in United Kingdom,
Ireland and Australia,[3] relating to its manufacture and sale of
prescription drugs containing benzodiazepine compounds, including
Ativan (the "Ativan Lawsuits") (Complaint for Declaratory Judg-
ment, dated Oct. 18, 2001, ("Complaint"), annexed as Ex. 62 to
Foresta Decl. ¶ 27; Answer, dated Nov. 27, 2001, ("Answer"),
annexed as Ex. 63 to Foresta Decl., ¶ 27).  <u>See</u> <u>John Wyeth &</u>
<u>Brother Ltd. v. Cigna Int'l Corp.</u>, 119 F.3d 1070, 1071-72 (3d
Cir. 1997).  Wyeth first received notice of a claim arising out
of its sale of Ativan in February 1987 (Pl's 56.1 ¶ 26; Def's
Opp. 56.1 ¶ 26, 28) and the first formal process in connection
with an Ativan Lawsuit was served on April 18, 1988 (Local Rule
56.1 Statement by Wyeth in Support of its Motion for Summary

_____

     [3]Although the Complaint, the Answer, and the parties' 56.1
statements refer only to foreign Ativan lawsuits filed in the
United Kingdom and Ireland, the record indicates that Ativan
lawsuits were brought in Australia as well (Wyeth's Objections
and Responses to Plaintiff's Third Set of Interrogatories,
annexed as Ex. 13 to Goldgehn Decl. at ¶ 7; Exs. 22-26 to
Declaration of Stephen Foresta, dated July 24, 2009, ("Foresta
Decl.")).

Judgment, ("Def's 56.1") ¶ 10; Local Rule 56.1 Responding State-
ment by Plaintiff in Opposition to Defendant's Motion for Summary
Judgment, ("Pl's Opp. 56.1"), ¶ 10; Wyeth's Objections and
Responses to Plaintiff Northbrook's Third Set of Interrogatories,
annexed as Ex. 13 to Goldgehn Decl. at ¶ 3; Ex. 33 to Foresta
Decl.).[4]  Wyeth defended all of the Ativan Lawsuits (Pl's 56.1 ¶
33; Def's Opp. 56.1 ¶ 33) and first hired outside counsel to
provide this defense in December 1987 (Pl's 56.1 ¶ 27; Def's Opp.
56.1 ¶ 27).  Eventually, all Ativan Lawsuits brought outside the
United States were resolved without Wyeth paying any sum in
judgment or settlement (Def's 56.1 ¶ 32; Pl's Opp. 56.1 ¶ 32;
Complaint, annexed as Ex. 62 to Foresta Decl. ¶ 28; Answer ¶ 28,
annexed as Ex. 63 to Foresta Decl.).  However, Wyeth paid more
than five million dollars in settlements and judgments in other
products liability lawsuits for each of the policy years covered
by the Excess Policies (Complaint, annexed as Ex. 62 to Foresta
Decl. ¶¶ 13, 21; Answer, annexed as Ex. 63 to Foresta Decl. ¶¶
13, 21; Transcript of Telephone Conference, Mar. 2, 2009 6:18-
7:8).

---

[4]Wyeth contends that the April 1988 writ was the first
served in connection with the Ativan Lawsuits (Wyeth's Objections
and Responses to Plaintiff Northbrook's Third Set of
Interrogatories, annexed as Ex. 13 to Goldgehn Decl. at ¶ 3;
Def's Opp. 56.1 ¶ 28).  Allstate does not contend or submit
evidence showing that Wyeth received formal process before this
date.

From May 1988 to September 1998, Peterson, Ross, Schloerb & Seidel, ("Peterson Ross"), and later Burditt & Radzius -- law firms retained by Wyeth's excess insurers to monitor the impact of product liability claims on Wyeth's self-insured retention, ("the Monitoring Firms") -- sent semi-annual and interim reports to Allstate describing Wyeth's defense of the Ativan Lawsuits (Def's 56.1 ¶¶ 1, 6-7, 15; Pl's Opp. 56.1 ¶¶ 1, 6-7, 15; Deposition of Thomas A. Reed, ("Reed Dep."), annexed as Ex. 1 to Foresta Decl. at 55:3-7, 58:4-21; 74:3 - 76:12; Declaration of Thomas A. Reed, annexed as Ex. 16 to Goldgehn Decl. at ¶ 1; Exs. 7-30 to Foresta Decl.).  Allstate also received similar, more detailed updates from McKenna & Co. -- the attorneys defending the Ativan Lawsuits in the United Kingdom -- through Wyeth's brokers Sedgwick James and later Marsh & McLennan (Def's 56.1 ¶ 27; Pl's Opp. 56.1 ¶ 27; Exs. 44-48 to Foresta Decl.; Deposition of John E. Wencelblat, ("Wencelblat Dep."), annexed as Ex. 14 to Goldgehn Decl., at 56:8 - 58: 17, 219:12 - 220:13; Deposition of Martin T. Gould, annexed as Ex. 4 to Goldgehn Decl. at 47:2-48:5).  The Ativan Lawsuits were also discussed at meetings of Wyeth's excess insurers held by the Monitoring Firms on November 3 & 4, 1988 and October 1, 1997 (Def's 56.1 ¶¶ 17-19, 30; Pl's Opp. 56.1 ¶¶ 17-19, 30).

C.   The Dispute Over Reimbursement

On June 4, 1998, Wyeth demanded $1,766,955 from Allstate as reimbursement for its expenses in defending the Ativan Lawsuits (Declaration of William J. Ruane, dated September 2, 2009, ("Ruane Decl."), ¶ 14; Ex. B to Ruane Decl.; Complaint, annexed as Ex. 62 to Foresta Decl. ¶ 31; Answer, annexed as Ex. 63 to Foresta Decl. ¶ 31).[5]  Prior to the Ativan Lawsuits, Allstate had reimbursed Wyeth under the Excess Policies for the expenses of defending other products liability lawsuits.  Al-

─────────────

[5]Allstate does not dispute the amount of Allstate's reimbursement demand, but contends that there is no evidence that the April 4, 1998 reimbursement request was ever sent to the Monitoring Firms or that the Monitoring firms ever sent the request to Allstate (Pl's 56.1 ¶ 31 n.1; Pl's Mem. at 11 n.4).  Allstate further contends that it did not receive a formal request for reimbursement until 1999 and submits the testimony of its claim director to this effect (Pl's 56.1 ¶ 31 n.1; Deposition of Terry Hayes, annexed as Ex. 17 to Goldgehn Decl., ("Hayes Dep."), at 113).  Nevertheless, in the September 30, 1998 semi-annual report to Allstate and correspondence to Allstate dated March 14, 2000, counsel for the Monitoring Firms state that Wyeth's "first written request for reimbursement" in connection with the Ativan Lawsuits was received in June 1998 and attach charts containing the same reimbursement demand contained in the June 4, 1998 letter (Ex. 27 to Foresta Decl.; Ex. 9 to the Declaration of Stephen G. Foresta in Opposition to Plaintiff's Motion for Summary Judgment).  Allstate's point is not entirely clear.  On October 19, 2000, Allstate denied Wyeth's claim for coverage (Ex. 60 to Foresta Decl.), so there can be no question that Allstate received some demand prior to that date.  To the extent Allstate is raising the issue in connection with its argument that it did not timely receive notice of claim, as discussed in section B(2), below, I conclude that the argument has been waived.  Thus, any issue as to when Allstate first received Wyeth's demand for payment is not material.  Although the March 14, 2000 memo references an additional request for reimbursement in January 2000, neither side has produced such a document.

though Allstate does not formally admit this fact in its submissions, Allstate's claim examiner and claim director both testified to Allstate's prior reimbursement of Wyeth's product liability claims under the Excess Policies; however, they also testified, and Wyeth does not dispute, that Allstate's reimbursement of these claims was based on an analysis of the Excess Policies in conjunction with the terms of policies issued by certain London Market Insurers and not the terms of the Midland Policy (Deposition of David L. Saam, annexed as Ex. 7 to Goldgehn Decl. at 125:24-28:13, 129:21-30:8, 144:6-46:10, 291:20-93:7, annexed as Ex. 8 to Goldeghn Decl.; Hayes Dep. at 133:8-34:9, 137:13-22, 139:21-40:10, 140:21-41:14; Pl's 56.1 ¶¶ 13-14; Def's Opp. 56.1 ¶¶ 13-14).  After Wyeth submitted its demand for reimbursement in connection with the Ativan Lawsuits, Allstate took the position on October 19, 2000 that it was not obligated to reimburse Wyeth's defense expenses (Def's 56.1 ¶ 33; Pl's Opp. 56.1 ¶ 33). Specifically, Terry Hayes, Allstate Claim Director, informed John E. Wencelblat of Wyeth that the Excess Policies, when analyzed in conjunction with the terms of policies issued by certain London Market Insurers, excluded "investigative, adjustment, and legal expenses" and thus excluded the defense costs for which Wyeth was seeking reimbursement (Ex. 60 to Foresta Decl.).  Allstate did not assert in its refusal that it was not obligated to reimburse Wyeth because the conditions to payment set forth in Endorsement

10

22 had not been met nor did it assert that Wyeth had failed to provide timely or adequate notice of the claim for which it was requesting reimbursement.  Indeed, the October 19, 2000 denial letter did not analyze Wyeth's demand in conjunction with any of the terms of the Midland Policy.  It is this refusal to pay by Allstate that gives rise to this action.

       D.   Procedural History

      Allstate commenced this action against Wyeth on October 22, 2001, in New York State Supreme Court, seeking a declaratory judgment that it was not obligated to reimburse Wyeth for its expenses in defending the Ativan Lawsuits (Complaint, annexed as Ex. 62 to Foresta Decl.).  On November 27, 2001, Wyeth answered Allstate's complaint, asserted affirmative defenses, sought a declaratory judgment that Allstate was obligated under the Excess Policies to reimburse Wyeth for defense expenses associated with the Ativan Lawsuits, and sought an award of $1,766,955.00, comprising the total reimbursement due (Answer, Annexed as Ex. 63 to Foresta Decl.).  Wyeth removed the action to this Court on November 28, 2001 (Notice of Removal, Docket Item 1).  On December 5, 2003, the Honorable Deborah A. Batts, United States District Judge, endorsed an agreement between the parties tolling Wyeth's claim for reimbursement and damages and any additional claims by Allstate for reimbursement of defense expenses already

paid to Wyeth in connection with non-Ativan lawsuits until a "final and non-appealable order" [sic] was entered with respect to Allstate's request for declaratory judgment (Tolling Agreement, Docket Item 18).  Specifically, Wyeth agreed to toll its claim for "a declaration that it [wa]s entitled to reimbursement, under the [Excess] Policies, for defense costs and expenses incurred in connection with any product liability claims, including but not limited to Ativan Claims," but did not "waive its right to assert any other defenses or objections to Allstate's claim for declaratory relief in the Present Declaratory Action" and did not "waive any counterclaims . . . or any other rights except as provided herein" (Tolling Agreement, Docket Item 18, at 2-3, 5).  The Tolling Agreement defined the "Present Declaratory Action" as Allstate's action "seeking a judicial declaration that it ha[d] no obligation under [the Excess Policies] to pay Wyeth's claim for reimbursement of defense costs and expenses incurred by Wyeth in connection with underlying product liability claims against Wyeth by persons who allegedly sustained injury as a result of their use of Ativan" (Tolling Agreement, Docket Item 18, at 1-2).[6]  The parties completed discovery and filed motions

---

[6]The Tolling Agreement provides in pertinent part:

> WHEREAS, Allstate is seeking a judicial declaration that it has no obligation under [the Excess Policies] to pay Wyeth's claim for reimbursement of defense costs and expenses incurred by Wyeth in connection with
>
> (continued...)

---

[6](...continued)
  underlying product liability claims against Wyeth by
  persons who allegedly sustained injury as a result of
  their use of Ativan . . . (. . . the "Present
  Declaratory Action"); and

                        *       *       *

  WHEREAS, Wyeth wishes to preserve the right to bring
  claims for:  (1) a declaration that it is entitled to
  reimbursement, under the Northbrook Policies, for
  defense costs and expenses incurred in connection with
  any product liability claims, including but not limited
  to Ativan Claims; and (2) an award of money damages for
  [such claims] (collectively, "Wyeth's Preserved
  Claims"); and

  WHEREAS, Allstate wishes to preserve its right to bring
  additional claims for reimbursement of amounts
  previously paid by Allstate to Wyeth for defense costs
  and expenses incurred by Wyeth in connection with
  underlying product liability claims other than Ativan
  claims . . . ;

  NOW THEREFORE, . . . Allstate and Wyeth agree . . . as
  follows:

  1.  Wyeth agrees to refrain, until the Present
  Declaratory Action is resolved by entry of a final and
  non-appealable order, from asserting any of Wyeth's
  Preserved Claims in any legal . . . proceeding. . . .

  5.  Allstate agrees that, in defense of any of Wyeths's
  Unpreserved Claims, it will not plead the statute of
  limitations, or the doctrine of laches or any other
  legal or equitable theory arising out of the passage of
  time from the Effective Date to the end of the Tolling
  Period. . . .

  10.  By this Agreement, Wyeth does not waive its right
  to assert any other defenses or objections to
  Allstate's claim for declaratory relief in the Present
  Declaratory Action and does not waive any
  counterclaims, cross-claims, third party claims, or any
  other rights except as provided herein.
                                          (continued...)

13

for summary judgment in March 2004 (Pl's 56.1 ¶ 9; Def's 56.1
Opp. ¶ 9; Docket Items 22, 36).

The parties consented to my jurisdiction on August 28,
2008 (Docket Item 43), and on March 31, 2009, I issued an Opinion
and Order finding that, subject to the conditions set forth in
Endorsement 22, Allstate was required by the terms of the Midland
Policy to reimburse Wyeth's defense expenses, that the Excess
Policies do not exclude or conflict with this obligation, and
that this obligation attached when Wyeth had paid a total of five
million dollars in settlements or judgments in a particular
policy year.  I found, however, that the parties did not address
whether the conditions set forth in Endorsement 22 had been met
and that summary judgment on these issues was, therefore, inap-
propriate (Opinion and Order, dated Mar. 31, 2009 (Docket Item
46), ("March 2009 Opinion and Order"), at 26).[7]  Subsequently, I
permitted to the parties to take limited discovery and to file
motions for summary judgment on the issue of whether the condi-
tions of Endorsement 22 were met.  Specifically, the parties were
to address (1) whether Allstate elected not to investigate,
settle, or defend the Ativan Lawsuits, (2) whether Wyeth made or

---

[6](...continued)
(Tolling Agreement, Docket Item 18, at 1-5).

[7]Allstate's motion for reconsideration of the March 2009
Opinion and Order was denied on September 3, 2009 (Opinion and
Order, dated September 3, 2009 (Docket Item 71)).

caused to be made an investigation or defense that was reasonably necessary, and (3) whether such investigation or defense was under the supervision of Allstate (Transcript of Proceedings dated April 20, 2009 at 4-6; Transcript of Proceedings dated April 24, 2009 at 3-4).  The parties agreed that, pursuant to the Tolling Agreement, the reasonableness of fees would not be addressed in the instant motions (Transcript of Proceedings dated April 20, 2009 at 6, Transcript of Proceedings dated April 24, 2009 at 3).

III.  Analysis

     A.  Legal Principles

          1.  Summary Judgment

          The standards applicable to a motion for summary judgment are well-settled and require only brief review.

               Summary judgment shall be granted when there is no
               genuine issue of material fact and the moving party is
               entitled to judgment as a matter of law.  Fed.R.Civ.P.
               56(c).  This form of relief is appropriate when, after
               discovery, the party . . . against whom summary judg-
               ment is sought has not shown that evidence of an essen-
               tial element of her case -- one on which she has the
               burden of proof -- exists.  See Celotex Corp. v.
               Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d
               265 (1986).  This form of remedy is inappropriate when
               the issue to be resolved is both genuine and related to
               a disputed material fact.  An alleged factual dispute
               regarding immaterial or minor facts between the parties
               will not defeat an otherwise properly supported motion
               for summary judgment.  See Howard v. Gleason Corp., 901
               F.2d 1154, 1159 (2d Cir. 1990).  Moreover, the exis-

15

tence of a mere scintilla of evidence in support of
nonmovant's position is insufficient to defeat the
motion; there must be evidence on which a jury could
reasonably find for the nonmovant.  Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 91
L.Ed.2d 202 (1986).

If the movant demonstrates an absence of a genuine
issue of material fact, a limited burden of production
shifts to the nonmovant, who must "demonstrate more
than some metaphysical doubt as to the material facts,"
and come forward with "specific facts showing that
there is a genuine issue for trial." Aslanidis v.
United States Lines, Inc., 7 F.3d 1067, 1072 (2d Cir.
1993).  If the non-movant fails to meet this burden,
summary judgment will be granted against it.

Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir.

2004); accord Binder & Binder PC v. Barnhart, 481 F.3d 141, 148

(2d Cir. 2007); Jeffreys v. City of New York, 426 F.3d 549,

553-54 (2d Cir. 2005); Gallo v. Prudential Residential Servs.,

Ltd., 22 F.3d 1219, 1223-24 (2d Cir. 1994); see also McPherson v.

New York City Dep't of Educ., 457 F.3d 211, 215 n.4 (2d Cir.

2006) ("[S]peculation alone is insufficient to defeat a motion

for summary judgment.").

"In determining whether a genuine issue of material

fact exists, a court must examine the evidence in the light most

favorable to, and draw all inferences in favor of, the non-movant

. . . .  Stated more succinctly, '[t]he evidence of the non-mov-

ant is to be believed.'" Lucente v. Int'l Bus. Machs. Corp., 310

F.3d 243, 253-54 (2d Cir. 2002), quoting Anderson v. Liberty

Lobby, Inc., supra, 477 U.S. at 255; accord Jeffreys v. City of

New York, supra, 426 F.3d at 553 ("Assessments of credibility and

16

choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.") (internal quotations omitted); see also Make the Road by Walking, Inc. v. Turner, 378 F.3d 133, 142 (2d Cir. 2004); Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).  These same standards apply where, as here, there are cross-motions for summary judgment.  Fourth Toro Family Ltd. P'ship v. PV Bakery, Inc., 88 F. Supp. 2d 188, 193 (S.D.N.Y. 2000) (Hellerstein, D.J.).  "The court must rule on each party's motion on an indi-vidual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." 10A Charles A. Wright, Arthur A. Miller, Mary K. Kane, Federal Practice & Procedure § 2720 at 335-36 (3d ed. 1998).

        "Material facts are those which 'might affect the outcome of the suit under the governing law,' and a dispute is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Coppola v. Bear Stearns & Co., 499 F.3d 144, 148 (2d Cir. 2007), quoting Anderson v. Liberty Lobby, Inc., supra, 477 U.S. at 248; accord McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007). "'[I]n ruling on a motion for summary judgment, a judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [non-movant] on the evidence presented[.]'"

<u>Cine SK8, Inc. v. Town of Henrietta</u>, 507 F.3d 778, 788 (2d Cir.
2007), <u>quoting</u> <u>Readco, Inc. v. Marine Midland Bank</u>, 81 F.3d 295,
298 (2d Cir. 1996).

      B.  The Parties'
        <u>Contentions</u>

        In addition to arguing that the conditions precedent to
Allstate's liability imposed by Endorsement 22 were met, Wyeth
argues that Allstate has waived its right to contest whether the
conditions of Endorsement 22 were met because it initially
disclaimed coverage on other grounds (Memorandum of Law in
Support of Defendant's Motion for Summary Judgment, dated July
24, 2009 (Docket Item 60), ("Def's Mem."), at 16).  Allstate, in
addition to arguing that the conditions imposed by Endorsement 22
were not met, contends that it has no obligation to pay defense
costs pursuant Endorsement 22 because Wyeth failed to comply with
the notice provisions of the Midland Policy (Plaintiff's Memoran-
dum of Law in Support of Motion for Partial Summary Judgment,
dated July 24, 2009 (Docket Item 63), ("Pl's Mem."), at 15-16).
Allstate also contends that the issue of whether the conditions
imposed by Endorsement 22 were met is reserved by the Tolling
Agreement and beyond the scope of the parties March 2004 summary
judgment motions.

        1.  The Tolling Agreement and
           the Parties' March 2004

18

Summary Judgment Motions

Allstate argues, in a footnote, that the issue of whether the conditions imposed by Endorsement 22 were met is reserved by the Tolling Agreement and is outside the scope of the parties' March 2004 summary judgment motions because whether the conditions of Endorsement 22 were met "is not relevant to whether the [Excess] Policies at issue contain language requiring [Allstate] to reimburse defense expenses" (Pl's Mem. at 2 n.1). Contrary to Allstate's contention, neither the Tolling Agreement nor the parties' March 2004 summary judgment motions limit the relevant issues to whether the language of the Excess Policies required reimbursement of defense expenses generally.  Rather, the Tolling Agreement defined the "Present Declaratory Action" as Allstate's "seeking a judicial declaration that it ha[d] no obligation under [the Excess Policies] to pay Wyeth's claim for reimbursement of defense costs and expenses incurred by Wyeth in connection with underlying product liability claims against Wyeth by persons who allegedly sustained injury as a result of their use of Ativan" (Tolling Agreement, Docket Item 18, at 1).  The March 2004 summary judgment motions, for their part, sought to resolve the entire action (Plaintiff's Motion for Summary Judgment, dated March 5, 2004 (Docket Item 36); [Defendants] Notice of Motion, dated March 5, 2004 (Docket Item 22)).  Indeed, Allstate's March 2004 motion for summary judgment requests a

19

declaration of "the proper construction and application" of the Excess Policies; specifically that Allstate "has no obligation [under the Excess Policies] to pay Wyeth for the defense expenses incurred in connection with [Wyeth]'s defense of Ativan Claims attributable to the effective period of such polic[ies]."  By their plain language, both the Tolling Agreement's definition of the "Present Declaratory Action" and Allstate's own March 2004 summary judgment motion contemplate a determination of Allstate's obligation to pay Wyeth's defense costs in connection with the Ativan Lawsuits.  A determination of whether the conditions of Endorsement 22 were met with respect to the Ativan Lawsuits is, therefore, not reserved by the Tolling Agreement or outside the scope of the March 2004 summary judgment motions.

          2.  Waiver of Right to
              Raise Non-Compliance
              <u>with Endorsement 22</u>

Wyeth argues that by failing to assert non-compliance with the conditions set forth in Endorsement 22 in its initial declination of coverage, Allstate waived its right to assert this defense to liability (Def's Mem. at 17).

The law is well-settled in New York "that an insurer is deemed, as a matter of law, to have intended to waive a defense to coverage where other defenses are asserted, and where the insurer possesses sufficient knowledge (actual or constructive)

of the circumstances regarding the unasserted defense." <u>New York
v. AMRO Realty Corp.</u>, 936 F.2d 1420, 1431 (2d Cir. 1991), <u>citing
Luria Bros. & Co. v. Alliance Assurance Co.</u>, 780 F.2d 1082,
1090-91 (2d Cir. 1986); <u>MCI LLC v. Rutgers Cas. Ins. Co.</u>, 06 Civ.
4412 (THK), 2007 WL 2325867 at *7 (S.D.N.Y. Aug. 13, 2007) (Katz,
M.J.); <u>Olin Corp. v. Ins. Co. of N. Am.</u>, 84 Civ. 1968 (TPG), 2006
WL 509779 at *2 (S.D.N.Y. Mar. 2, 2006) (Griesa, D.J.).  As
explained by the New York Court of Appeals:

> Waiver evolved because of courts' disfavor of forfei-
> tures of the insured's coverage which would otherwise
> result where an insured breached a policy condition,
> as, for instance, failure to give timely notice of a
> loss or failure to co-operate with the insured (16A
> Appleman, <u>Insurance Law and Practice</u>, § 9082).  To
> defeat the forfeiture, courts find waiver where there
> is direct or circumstantial proof that the insurer
> intended to abandon the defense (<u>Kiernan v Dutchess
> County Mut. Ins. Co.</u>, 150 NY 190, 195; see 16A
> Appleman, <u>Insurance Law and Practice</u>, § 9081).  Fur-
> ther, though an insurer's waiver of forfeiture be upon
> one ground, it is deemed to embrace unspecified grounds
> for forfeiture as well (<u>see Appell v Liberty Mut. Ins.
> Co.</u>, 22 AD2d 906, affd without opn 17 NY2d 519 [insurer
> disclaimed on the sole ground of insured's
> non-co-operation, thereby waiving late notice of acci-
> dent]; <u>Pensky v Aetna Life & Cas. Co.</u>, 84 Misc 2d 270
> [insurer rejected claim for failure of insured to give
> notice in writing, thus waiving failure of injured
> party to give reasonable notice]; see, generally, 18
> Couch, Insurance [2d ed], § 71:43).

<u>Albert J. Schiff Assocs., Inc. v. Flack</u>, 51 N.Y.2d 692, 698, 417
N.E.2d 84, 87, 435 N.Y.S.2d 972, 974-75 (1980).

In this case, Allstate's October 2000 letter denied
coverage for Ativan-related defense costs on the ground that
defense costs were not covered under the terms of the Excess

Policies when read in connection with policies issued by certain
London Market Insurers (Ex. 60 to Foresta Decl.).  Allstate's
declination letter did not assert that it was not obligated to
pay its share of the defense costs of the Ativan Lawsuits because
the conditions of Endorsement 22 were not met.  Furthermore, as
of the date of its declination letter, Allstate had the Midland
Policy (Hayes Dep. at 121:7-16) and had received regular, de-
tailed updates regarding the Ativan Lawsuits for ten years.
Thus, Allstate had either actual or constructive knowledge of the
circumstances giving rise to the defense, i.e., whether Wyeth had
(1) given Allstate sufficient information to enable it to elect
to defend the Ativan Lawsuits, (2) conducted a reasonably neces-
sary defense and (3) given Allstate the opportunity to supervise
the Ativan Lawsuits.  Accordingly, by failing to cite the non-
occurrence of the conditions set forth in Endorsement 22 as a
justification for its decision not to reimburse Wyeth for
Allstate's portion of the defense costs, Allstate waived its
right to deny coverage based on this ground.[8]  See State of N.Y.

---

[8]I have not overlooked the rule that an insurer does not a
waive a coverage defense by failing to assert the defense in its
correspondence denying benefits.  See Gallien v. Conn. Gen. Life
Ins. Co., 49 F.3d 878, 885 (2d Cir. 1995), citing Albert J.
Schiff Assocs., Inc. v. Flack, supra, 51 N.Y.2d at 698, 417
N.E.2d at 87, 435 N.Y.S.2d at 974-75.  As its name implies, a
coverage issue ordinarily involves the question of whether a
particular type of risk is insured against by the policy, i.e.,
whether the risk is within the policy's coverage.  A defense
based on the non-occurrence of the conditions precedent to an
                                          (continued...)

v. AMRO Realty Corp., supra, 936 F.2d at 1430 (insurer waived late notice of occurrence defense when it disclaimed coverage on other grounds despite receiving notice four years after occurrence); Bear Stearns & Co., Inc. v. Underwriters at Lloyd's, 87 Civ. 5786 (MJL), 1991 WL 84558 at *3 (S.D.N.Y. May 14, 1991) (Lowe, D.J.) (insurer waived right to assert defense based on insureds failure to pay premiums and file declarations required by the policy when, after investigating the claim, it disclaimed on other grounds).

Allstate argues that it did not have sufficient knowledge to waive its rights under Endorsement 22 because Wyeth had not asserted Endorsement 22 as a basis for reimbursement of defense costs at the time it denied Wyeth's claim (Pl's Mem. at 15 n.6).  Allstate's argument is without merit.  "[B]ecause a person who signs a contract is presumed to know and understand its contents, the failure to read a contract, or to apprehend the rights and obligations under it, will not prevent a waiver of its terms or conditions."  13 Richard A. Lord, Williston on Contracts § 39:22 (4th Ed. 1990); see Gold v. Deutsche Aktiengesellschaft,

---

⁸(...continued)
insurer's liability -- the nature of the dispute here -- is not, therefore, a coverage dispute and can be waived by disclaiming coverage on other grounds.  See N.Y. Univ. v. Cont'l Ins. Co., 87 N.Y.2d 308, 322, 662 N.E.2d 763, 772, 639 N.Y.S.2d 283, 292 (1995) (insurer's right to assert insured's failure to comply with a condition precedent to coverage can be waived by disclaiming coverage on other grounds).

365 F.3d 144, 149 (2d Cir. 2004), quoting Metzger v. Aetna Ins.
Co., 227 N.Y. 411, 416, 125 N.E. 814, 816 (1920) ("in the absence
of fraud or other wrongful act on the part of another contracting
party, a party 'who signs or accepts a written contract . . . is
conclusively presumed to know its contents and to assent to
them[.]"); Sun Forest Corp. v. Shvili, 152 F. Supp. 2d 367, 382
(S.D.N.Y. 2001) (Lynch, D.J.) ("a signatory to a contract is
presumed to have read, understood and agreed to be bound by all
terms[.]"); see Stamm v. Barclays Bank of New York, 960 F. Supp.
724, 731 (S.D.N.Y. 1997) (Scheindlin, D.J.) (same).  Moreover,
Allstate's predecessor, Northbrook, chose to write a policy that
incorporated the terms of another insurance policy by reference,
and Allstate cannot now avoid its contractual obligations based
upon confusion resulting from that choice.  There was nothing in
Wyeth's demand for reimbursement that suggested it was not
relying on Endorsement 22; in fact, Wyeth's demand for reimburse-
ment provided no explanation of the contractual provisions that
supported its claim.  If Allstate wanted an explanation of the
bases for Wyeth's claim to ensure that it was asserting all
relevant defenses, it was certainly free to ask for such an
explanation.  Allstate chose not to do so, and is now bound by
the legal consequences of its actions.

      Because Allstate failed to assert the non-occurrence of
the conditions set forth in Endorsement 22 as a basis for its

refusal to reimburse Wyeth for the costs of defending against the
Ativan Lawsuits, it has waived this defense and cannot now assert
it.  Thus, Wyeth is entitled to summary judgment on the issue of
Allstate's liability to it under Endorsement 22, and I need not
consider the other arguments raised by the parties concerning
Endorsement 22.

        3. Waiver of Right
          to Assert Lack of Notice

For substantially the same reasons set forth in the
preceding section, Allstate's contention that it is relieved of
its obligation to pay Wyeth's defense costs because Wyeth failed
to comply with the prompt notice provisions[9] of the Midland
Policy (Pl's Mem. at 15- 17) is without merit.  As discussed
above, Allstate's October 2000 denial letter disclaims coverage
solely on the ground that the Excess Policies do not provide
coverage for defense costs, and does not assert timely or insuf-
ficient notice as a defense to coverage.  Therefore, Allstate has
also waived any lack of notice defense to payment of defense

---

[9]The Midland Policy contains both notice of occurrence and
notice of suit provisions which require notice "as soon as
practicable" in the event of an occurrence and immediate notice
in the event of a claim or suit.  The provisions also require
that suit papers, individual information about potential
claimants and the "time, place, and circumstances" of the loss be
provided to the insurer by the insured (Midland Policy at NBK
0000414, annexed as Ex. C to Stip., annexed in turn as Ex. 1 to
Goldgehn Decl.).

costs pursuant to the Excess Policies.  See MCI LLC v. Rutgers Cas. Ins. Co., supra, 2007 WL 2325867 at *10 (insured waived late notice defense when, after being notified of the accident and claims at issue, it disclaimed coverage on other grounds); Olin Corp. v. Ins. Co. of N. Am., supra, 2006 WL 509779 at *4 (insurer waived late notice defense by reserving its rights on other grounds when insured's initial correspondence to insurer showed that insured had knowledge of facts giving rise to the claim years earlier).[10]

   4. Allstate's
      Motion to Strike

       Allstate also moves to strike various documents submitted by Wyeth in support of its motion for summary judgment. Because I need not consider any of the documents cited by Allstate in either of its motions to strike, these motions are denied as moot.

---

[10]Because Allstate waived its defenses of non-compliance with Endorsement 22 and lack of notice by virtue of the October 2000 letter, I do not address Wyeth's argument that these defenses were also waived by a November 30, 1988 reservation of rights letter from Peterson, Ross to Wyeth (Def's Opp. at 16; Ex. 41 to Foresta Decl.).

26

IV.  Conclusion

          Accordingly, for all the foregoing reasons, Wyeth's
motion for summary judgment (Docket Item 57) is granted and
Allstate's cross-motion for summary judgment (Docket Item 62) is
denied.  Allstate's motions to strike certain exhibits offered by
Wyeth in support of its motion for summary judgment,(Docket Items
75, 77), are denied as moot.

Dated:  New York, New York
        March 31, 2010

                              SO ORDERED


                              HENRY PITMAN
                              United States Magistrate Judge


Copies transmitted to:

Anthony Gambardella, Esq.
Rivkin, Radler & Kremer
EAB Plaza - West Tower
Uniondale, New York 11556

Stephen G. Foresta, Esq.
Orrick, Herrington & Sutcliffe, L.L.P.
666 Fifth Avenue
New York, New York 10103